The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Thomas M. Harris presiding. Good afternoon, counsel. This next case is case number 4-22-0340. Xochi, LLC v. City of Galena. And counsel for the appellant, would you state your name for the record? Yes, Your Honor. Attorney Matthew Bolin. Okay. Thank you. And for the appellate? Good afternoon, Your Honor. Mike Stauder for the City of Galena. Okay. Thank you, counsel. Mr. Bolin, are you ready to proceed? I am, Your Honor. You may. Thank you. May it please the Court, as stated earlier, I'm Attorney Matthew Bolin with the law firm of Bolin Law, P.C. in Dubuque, Iowa. Essentially, there are two issues here today before the Court. First one is whether or not the Illinois Tort Immunity Act shields the defendant in this matter, the appellee, from liability. And then two, whether or not the complaint alleged sufficient facts to sustain a motion to dismiss at the circuit court level. To address the first issue, the Illinois Tort Immunity Act does contain a provision. The provision itself essentially shields any municipality against certain types of liability. The relevant code section is in the brief, but to state the important parts of it, in a motion to dismiss, the defendant had a burden to show essentially that its failure to sign the zoning form that was requested by the plaintiff appellant at the time was considered, as the code provides, an issuance, denial, suspension, or revocation of a permit, license, certificate, approval, and it goes on a little bit further, order, or some other similar authorization. It's the appellant's position that what the appellant had asked of the city of Galena was not for the purposes of issuing or denying or suspending or doing anything with the validity of the permit, but to simply acknowledge that the permit existed, that the plaintiff, Xochitl, was in good standing when it comes to the zoning requirements of the city, and they weren't essentially asking for them to do anything affirmatively other than just acknowledge a fact that was already in place at the time. It's because they did not acknowledge this fact that the plaintiffs... Mr. Cohn, I apologize, but the plain reading of section 2104 says there is no liability to a public entity for its failure or refusal to issue, deny, and it goes on and talks about certification or approval of any permit. Isn't this exactly the situation that we have here? So, with this, it's our interpretation of the language, and, Your Honor, I think you said revoke any permit, license, certificate, approval, or other similar authorization. We weren't asking that the city authorize anything. We weren't asking them to issue anything. We weren't asking them to deny, suspend, or revoke, but simply acknowledge that that process in which this code section applies to had already taken place, that the plaintiff was, in fact, in good standing when it came to the zoning requirements of the city, and we're simply asking that the city acknowledge something that they had already done. This doesn't stem from... Counsel, do you have any language or authority that this immunity statute only applies to matters that are not yet approved or granted? There was nothing that could be found directly on point. Because of that, that's why we initiated the appeal for the court to interpret, essentially, whether that type of language could be found within the context of the reading of the statute. And, of course, we're here today to ask that the court find that when you look at the interpretation of the statute, that there is nothing in there that would go specifically to the after effect of a permit having already been issued. It's only in the process of the permit or license being issued by the municipality. Counsel, go ahead. No, Justice Feigman, you go ahead. My question regarding, as a follow up, that is to Justice Bridges' question is this. Why doesn't Golima's refusal to complete the form after the cannabis license lottery was conducted constitute a denial by the zoning administrator? Because at the time, the Verilife, which was the company that Xochitl had entered into a lease agreement with, was already proved to be able to operate a cannabis dispensary. And so we weren't asking the city to approve anything with Xochitl's lease with Verilife, but acknowledged for Verilife's own sake that what they were about to get into as far as a business relationship with Xochitl was a valid legal relationship that could be undertaken based upon something the city of Golima had already done. Well, Golima refused to complete the form, did it not? That's correct. And it refused to do that until after the cannabis license lottery was conducted. So I suppose my question is, how does that not constitute a denial? You've asked them to do something, they've denied it. Isn't that what the statute says is then covered? Your Honor, I do agree in that respect. The statute itself would be injury caused by the issuance, denial, suspension, or revocation of a permit, license, certificate, approval, or other similar authorization. We weren't asking the city to permit, to license, to certify, or I'm sorry, certificate or approve or authorize anything on behalf of Verilife or the plaintiff. We were just asking them to acknowledge, and that's where we're asking the court to draw a distinction, is there is a difference between acknowledging something already in existence and essentially allowing a process to move forward where there's a review and approval of someone's application. Well, we are called upon to look at lots of statutes and make lots of statutory interpretations. Section 2-104 is really pretty short, but even though it's so short, it uses language which strikes me as really amazingly broad, indicating an intent by the legislature to be as broad in its scope as possible. By that I mean it says, public entity is not liable, then it goes on to say for what, for any injury caused by issuance, denial, suspension, or revocation of, or by failure or refusal to issue, deny, suspend, revoke, any permit, license, certificate, approval, order, or similar authorization. I mean, they could have stopped earlier on if they were just going to have a restricted statement or restricted intent, but to add any permit, license, certificate, approval, order, or similar authorization. Where the entity is authorized to grant it, here they could have said yes, but they denied it. Given how all-encompassing this language is, why doesn't it bespeak of a legislative intent to have it read broadly, as opposed to the rather cramped interpretation you're suggesting? Your Honor, that would be because if the legislature went to the extent that they were going to include specific acts such as issuance, denial, suspension, or revocation, and specific processes such as deny, suspend, revoke, any permit, license, certificate, but failed to include language that would acknowledge the existence of, if the legislature is going to be as specific as that to list those, then certainly it would go to say that there's the legislative intent, but that's all that it's supposed to essentially shield the municipality from liability from. If there's other things such as if they don't acknowledge a currently issued permit or they don't do things to state that it is in place, the process of acknowledging and the process of approving are different in how a city would handle going about that. It's a matter of looking up some records, filling out a form, and providing it, versus whether or not they would require a hearing on the issuance of the permit or the certificate and so forth. Go ahead. If I can interpose a question here. The notice of proper zoning form, which was the actual document that was requested to be filled out by City of Galena, if that had been executed, it then would go to who? Would that go to the Illinois Department of Financial and Professional Regulation? My understanding is yes, it would be. Then once completed and certified, it would be provided back to Verilife for them to be able to essentially complete their due diligence process and move forward with the lease they had entered into with the plaintiff. Was there any alternative to submitting this notice? In other words, you indicated that your client was simply requesting the city to acknowledge something already in existence. What would that something be? That they had previously received the approval to be zoned for purposes of a cannabis dispensary where their building was located in the City of Galena. Would that be something in documentary form? That would have been... They would have received a permit or... I guess I'm sorry, I might misunderstand the question. They would have received a permit. Okay, a permit. So, would the Illinois Department of Financial and Professional Regulation... Were they tendered a copy of this permit when the City of Galena did not issue the notice of proper zoning form? I apologize, Your Honor, I do not know. Could they have? Would this have been an alternative? In other words, was this a complete blockage for your client? If they didn't get this notice of proper zoning form, they couldn't proceed? Or could there have been just simply a submission of this other document that you referred to? Your Honor, I think to clarify, based upon the contractual terms between the plaintiff and Verilife, that is what Verilife requested for purposes of moving forward. And I think it also forms the basis of the contingency period in the early negotiations as to what would allow Verilife to back out if they didn't receive the required documentation they were specifically seeking. I see. One other question. Could plaintiff have sought... Could plaintiff have obtained mandamus relief here based on the facts that we have? Could they have compelled City of Galena to complete the notice of proper zoning form? With respect to that, Your Honor, the one case that I did review and see in there, and I believe it was... I have to look up the case citation, but it was the one where it was an employee with a miscalculated pension. He versus Oak Brook. Thank you, Your Honor. In that case, they did seek mandamus relief. I believe because the relationship was directly with that individual's employer, the circumstances were different, whereas with here, it was a lease. Essentially, it was the plaintiff trying to do business, but it's business being blocked by an obligation that the city would have to acknowledge. I don't know that mandamus relief would have been appropriate under the circumstances. Okay, thank you. Counsel, I have a question because I wanted to get to it. My understanding when we're talking about a duty is that it's a statutory duty imposed by statute. Case law establishes it. Here, in the case you cited, it was Stevens versus Village Oak Park. You talked about the village's duty to address this individual's pension. Here, it's the ministerial duty to complete the zoning form. My understanding is the basis in Stevens was the special relationship that the village had with an employee. My understanding from years of dealing with duty is there must be either a statutory provision that provides a duty or special relationship. What is the special relationship here that would require the City of Galena to owe your client to perform this ministerial act of completing the form? Thank you, Your Honor. Our argument is the duty came out of the issuance of the permit itself. I'm sorry, not permit, but essentially approving the plaintiff under the current zoning regulations because they had done that because they had had that process. They then developed that relationship or created that duty, so to speak, that in the event it had to be acknowledged or that the city had approved it, then the city would comply with getting that completed in the event that the zoning itself was an issue for this plaintiff to do business. The plaintiff had the authorization for the zoning as requested or had been authorized and zoned as requested, but in order to prove that, the duty would be upon the city to say, we did this, we approved it, these are our records, and yes, that's the way it's supposed to be. Because they had done that to begin with, that's where the plaintiff's argument, the duty comes into place. Okay, but so your position is once they issue the permit, they have a duty to notify everyone about that permit. So where does the duty come for Xochitl here? Your Honor, not necessarily a duty to notify everyone about the permits, but the duty to acknowledge that the permit's been issued by the city of Galena upon request by either Xochitl or, well, in this case it was Xochitl, but through the Verilife that was seeking to essentially establish a business in Xochitl's property. The permit was through Verilife. Where is the duty owed to Xochitl here? It would be the approved zoning of the building which Xochitl owned. So my question again is, where do we get the duty to Xochitl? The permit was not approved for Xochitl. Correct. So how does this village, the city of Galena, have a duty to your client to complete this form? Your Honor, our argument is because the context of the form was to acknowledge the plaintiff's zoning of the building that was in question, that they also owed a duty to Xochitl as well as Verilife. You may continue. Thank you. Thank you. Your Honor, in absence of any further questions, I believe I've covered what I'd like to cover for oral argument. Okay, thank you, Mr. Boylan. Mr. Staudter, argument. Good afternoon, Your Honor. May it please the court. As I mentioned earlier, my name is Mike Staudter. I represent the city of Galena in this matter. Our response to Mr. Boylan's appeal is that the circuit court's judgment should be affirmed for two reasons. Number one, it correctly found that section 2-104 of the Tort Immunity Act bars their cause of action. And second, that their cause of action fails to state a cause of action under Illinois negligence law. I think the crux here of this case is the Tort Immunity Act. And that's a barrier that Xochitl simply can't overcome before we even get into the issue of duty or causation. I believe it was Justice Bridges or Steigman, I apologize, I can't remember which one, that brought up the fact that the Tort Immunity Statute was drafted by the legislature broadly. And that's because the intent of the legislature, which is what the court is to look at in giving effect to the statute, was to shield municipalities from liability arising out of the operation of government. And in looking at legislative intent, the court is to look at the plain language of the statute. Here, the plain language of the statute precludes liability against the municipality for a failure, refusal, denial, whichever one of these action words we want to apply to what Galena did in this case. That's in the black and white letter of the statute. The second component of this is obviously whether that refusal, failure, or denial pertain to an approval or other authorization. Now, the plaintiff is trying to circumvent this language by calling this zoning form anything but an approval or an authorization. They repeatedly in their briefing call it an acknowledgment. In another point, they refer to it as it was seeking certification of what the zoning was or confirmation of what the zoning was. These are all just synonyms for an approval or an authorization. This zoning form, in effect, was to manifest Galena's authorization or approval for the zoning of cannabis dispensary at the proposed location. Mr. Spaulder, I'm looking at the form, and it has several questions that must be answered by the authorized zoning representative. Are any of those questions, the substance of any of those questions, something that would not be self-evident within the special use zoning permit that Mr. Boland indicates was issued? Any of the questions in the zoning form you're referring to, Justice Harris? The notice of proper zoning form, questions six through nine, are any of those questions dealing with what they call for information that aren't explicitly set forth in the special use zoning permit? Because I believe Mr. Boland was indicating the special use zoning permit is what they were wanting to simply be acknowledged by the filling out of this notice. I believe, Justice Harris, if I'm understanding your question, number seven, which asks if the location of the proposed dispensary was in compliance with minimal local zoning restrictions, that would have been evidenced by the special use permit. But I think the issue is asking Galena to check that box and to affirm that that is, in effect, Galena's authorization or approval being conveyed to the state that the cannabis dispensary is allowed to be conducted at that location. And that brings us back to the statute of 2-104. Whether this is classified as an outright denial, Galena's refusal to do this until the moratorium was lifted, or simply their failure to execute this form, Xochitl can't get around the statute. It's plainly a failure, denial, refusal to issue an approval, or as the language indicates in the statute, a similar authorization. Now that language is intentionally broad, as has been pointed out, for the purpose of shielding municipalities from liability. I'd like to ask another question, kind of to test the limits of what you were just addressing there, and that's the breadth of the immunity granted by Section 2-104. Let's say that, was it Mr. Oldenburg who was to fill this out, or that was within his purview? Let's say Mr. Oldenburg did fill this out, gave it to an assistant to then provide to Xochitl, either representative of Xochitl is at the counter in the office or to mail to Xochitl, but the assistant just doesn't do it and just holds on to it. So you have a completed notice, but for whatever reason, just not giving it to Xochitl. And then we have some kind of fallout. The dispensary can't go forward because of the failure to simply tender the completed notice. Would Section 2-104 immunize or provide immunity in that circumstance? I believe in that circumstance, Your Honor, it still would. A clerk working in the department would be an agent of the village, or in this case, the city of Galena. The only limitation that's been found in Section 2-104 comes from the Doyle case, which they noted was either, I believe it was willful and wanton conduct or something done with malice, neither of which, in your hypothetical, Your Honor, would be present. And those certainly aren't allegations being levied against Galena in this case. So in that hypothetical, I think even if a city employee working in the zoning office failed to issue that, then yes, under the plain language of the statute, that would constitute a failure to issue an approval or authorization, and that would still be encompassed by the statute. Thank you. The lease itself was conditioned on obtaining all government approvals. So again, if we're to take Xochitl's allegations as true, that Verilife terminated its lease because Galena did not fill out the zoning form, then it would have to be relying on the provision of that lease that it did not obtain all the requisite approvals. So this zoning form was plainly an approval and an authorization. And again, under the plain language of the statute, that is precisely what the legislature intended to shield the municipality from. The second part about this is... I'm still stuck on this issue of duty here. And when I was asking questions earlier, I was using Verilite. My question is this. The permit was not issued to Xochitl or doing business as Verilite. It was in fact issued to what is referred to as UHCC LLC, which is doing business as Bridge City Collective. Tell me where there would be a duty to... Why do you agree there is a duty that is owed to Xochitl here? The permit was not issued by either of them. Correct. And Your Honor, perhaps I'm misunderstanding your question. I don't believe there was a duty owed to Xochitl. I know that's your position, but can you explain why you don't believe there was a duty owed to Xochitl? Absolutely. In other words, the immunity issue is really the crux of the case, but I'm still stuck on the issue of a duty that's owed here. Understood, Your Honor. The duty, as Mr. Boylan has pointed out in his brief, it first turns on an issue of foreseeability. And here, it was not foreseeable that by not filling this form out for Verilite that it was going to hurt the business interests of Xochitl. And the reason why is it all comes back to this lease. They've argued in their briefing that by virtue of sending a letter to Galena saying that they have a prospective lease with Xochitl, that Galena is now on notice, that not filling out this zoning form by a date that was not communicated to Galena, that that somehow is going to cause an injury to Xochitl. And there's two important facts to keep in mind with this. Number one is the entirety of that lease was never provided to Galena. So apparently there's this time contingency in the lease of 180 days. Galena was only provided the first and last page of this lease, neither of which contain that contingency clause. I'll just point out, if you could just bookmark where you're at, and I'm sorry to interrupt. But, you know, that might be an appropriate basis for dismissal under 2-615. You brought your motion to dismiss under 216A9, and that's the immunity part of this. The trial court dismissed or granted the motion to dismiss. Why wouldn't a plaintiff have an opportunity to re-plead? To re-plead based on the... So, okay, to answer that question, Justice Harris, the reason is that this... The plaintiff cannot demonstrate that the breach of this lease and what really amounts to a business decision by Verilife was a product of this lease. And the reason is, according to the facts that they've pled, there's this 180-day requirement. And the lease was entered into on June 12th. So, 180 days would bring you to December 12th of 2020. Xochitl, or I'm sorry, Verilife brings this letter to Galena's attention in late August. And all it says is, please fill this out. I respectfully ask that this be completed by, I believe it was August 28th was the date. If this plays out where Galena had told them, we can't do this until the moratorium is lifted, which was a month after the drawing, which took place in September. Then come October, Galena can then entertain a request to fill out the zoning form. And Verilife still has two full months to get this form signed, to get whatever other authorizations and paperwork they need from the state or anybody else. And so, to answer your question, Justice Harris, the reason why that even if they repled the facts, they ultimately can't plead any facts to demonstrate that this was a product of anything but a business decision on Verilife. Verilife waited until this state drawing took place. And then when neither property got the license, both properties were open. And Xochitl knew that this was a risk all along, and they failed to protect the business interests. And so what Verilife turned around and did is they waited until the 180-day contingency provision of this lease lapsed, and then they went down the street to a location. Why they went to that location, to be frank, that's not an issue before the court, and that's something that only Verilife can answer. But even if Xochitl was given leave to replead their facts, they can't get around the fact that there's nothing to support that Galena not filling out this form as expeditiously as Verilife wanted was the reason that Verilife went down the block. Thank you, and I appreciate that, and I interrupted you while you were mid-answer to Justice Bridges' question. At the time I was answering Justice Bridges' question, and I apologize, Justice Bridges, if I have not answered that question. No, you're good. Just continue. Okay. Really, both of those points, to answer your question, Justice Bridges, and your question, Justice Harris, they really blend into the foreseeability issue. The point I was originally making is Galena is essentially, in order for them to have the duty, it would have to be foreseeable that they were going to be in violation of a leasing provision that they had no knowledge of, and that some speculative way that if they don't sign this form by this self-imposed deadline that Verilife has, that that's going to affect what really amounts to a business decision. And so that's simply where there cannot be a duty on Galena's part to protect a business interest of Xochitl when a third-party company is making a business decision to go down the block. Ultimately, at the end of the day, Your Honor, it goes back to Section 2104. Xochitl is pleading that there is a breach of a ministerial duty. The case law under Doyle and the Mockmold case, they both hold an unbroken line of Illinois precedent that there's no distinction between a ministerial and a discretionary duty under the statute. The statute is broad by the plain language of it. It precludes liability for exactly what is being alleged against Xochitl, or against Galena. And for that, again, the Circuit Court properly found that their cause of action is barred. With that, I don't have anything further. I'm happy to answer Your Honor's questions if you have anything further. All right. I don't see any other questions. Thank you. Mr. Boland, rebuttal argument. Thank you, Your Honor. At this time, I would rely on my previous argument made. I don't have anything for rebuttal unless the Court has any questions for me at this time. I have a question, Counsel. Yes, Your Honor. There's been discussion about a question of any duty that Galena may erode under the facts of this case, but I suppose my question is this. If this Court were to conclude that Section 2-104 applied to give Galena immunity regarding the claim you're now making, are you asserting that somehow there'd be an issue of duty that would trump that finding? No, not at this time. I think the issue of duty comes secondary to the type of motion to dismiss filed by the defendant. It was based upon essentially an affirmative defense to why a claim would be barred against the city. I think the issue of a duty is more for the fact finder in a situation to be fledged out in a context other than the motion to dismiss that they had filed. Well, they had filed a motion to dismiss claiming two things. One was you failed to state a prima facie cause of negligence, and I guess that would be a 2615 matter. And then there's the 2619 affirmative matter under Section 2-104, the claim of immunity. And I suppose, to be clear, I want to ask about that immunity. It seems to me that if immunity were to apply here, that would be the beginning and end of this case, wouldn't it? I agree, Your Honor. Yes. I have nothing else. Thank you. Thank you. All right, counsel. Thank you. Thank you both. The case will be taken under advisement and the court will issue a written decision.